IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| EDUARD BANGIYEV, <br><br> *Petitioner,* <br><br> v. <br><br> UNITED STATES OF AMERICA <br><br> *Respondent.* | Criminal Action No. 1:14-cr-206 <br> Civil Action No. 1:16-cv-1189 <br> Hon. Liam O'Grady |

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Eduard Bangiyev's Motion to Vacate under 28 U.S.C. § 2255. (Dkt. No. 801). For the reasons stated below, the Motion is **DENIED** and the petition is **DISMISSED**.

### I. Background

On August 7, 2014, Petitioner was indicted for participation in a RICO conspiracy, in violation of 18 U.S.C. § 1962(d) and conspiracy to commit multiple counterfeiting offenses in violation of 18 U.S.C. §§ 371, 471, 427, 473, and 474. Dkt. No. 203. The indictment alleged that Petitioner participated in an international conspiracy and criminal enterprise to counterfeit United States currency from 2004 to 2014. *Id.* Petitioner participated in the conspiracy by distributing counterfeit currency on behalf of the criminal enterprise, leasing warehouse space for the benefit of the enterprise, sending raw materials used for counterfeiting to members of the criminal enterprise, and fraudulently constructing transactions to avoid detection of the counterfeit currency. Petitioner engaged in the criminal enterprise with numerous co-defendants including his brother, Arkadiy Bangiyev.

Petitioner reached a plea agreement with the Eastern District of Virginia United States Attorney's Office on the 2014 RICO charges. Dkt. No. 507. Pursuant to the plea agreement, Petitioner pleaded guilty to participating in the RICO conspiracy. *Id.* The charges of conspiracy to commit counterfeiting offenses were dropped as a condition of the plea agreement. *Id.* Petitioner also agreed to forfeit all interests in any assets attained through the conspiracy. *Id.* The Government agreed to set the limit of the value of these assets (the "fraud loss") in the range of $7 million to $20 million, with the condition that the defendant was entitled to argue for a lower amount of fraud loss. *Id.* The amount of fraud loss affected the amount the Government could recover in forfeiture and the calculation of Petitioner's sentence. Petitioner also waived his right to directly appeal his sentence. *Id.* Petitioner pleaded guilty on February 5, 2015. Dkt. No. 528. Petitioner and his brother appeared together during the plea hearing, engaged in the colloquy together, and pleaded to substantially the same statement of facts and charges. *Id.*

On May 28, 2015, the Court conducted a hearing to calculate the defendants' fraud losses. Dkt. No. 643. Petitioner and his brother appeared together at the hearing and jointly advanced arguments in support of their positions. The hearing lasted four hours and five minutes during which time the Court received testimony from Marybeth Dellibovi, who conducted the forensic analysis of the counterfeiting materials for the Secret Service, and Special Agent Adam Gaab, who participated in the arrest of Petitioner. Counsel for Arkadiy Bangiyev, Mr. Greenspun, crossed Ms. Dellibovi on whether the counterfeit bills which were attributed to the conspiracy could have been produced by a different counterfeiter using the same materials and equipment. *Id.*, 56:6-16. Mr. Greenspun also re-crossed Ms. Dellibovi on the source of the currency which Ms. Dellibovi analyzed and attributed to Petitioner. *Id.*, 67:14-15.

After conclusion of the testimony and arguments from counsel, the Court found that "the evidence establishes that the Bangiyevs were reasonably aware of between 7 and $20 million [in fraud loss]." *Id.* at 154:25-155:1. The Court based this calculation not only on the seizure of $2.6 million during the arrest "but also the evidence that Ms. Dellibovi testified about and the quantity of the counterfeit currency that was recovered[.]" *Id.* at 155:2-5. The Court also "looked at the printing presses. The equipment that is ordered and used[,]", and the duration of the Bangiyev's involvement in the conspiracy. *Id.* at 155:11-15. By contrast, the Court found that the other defendants "were here for a period of weeks and were involved in and were reasonably aware of the generation of over 2.5 but less than $7 million." *Id.* at 156:5-7.

On September 21, 2015, the Court sentenced Petitioner to 96 months incarceration, three years of supervised release, and a $100 special assessment. Dkt. No. 773. As with the earlier hearings, counsel for the brothers presented a consistent argument on some of the grounds for sentencing and the Court permitted the brothers to appear together during the hearing. *Id.* at 2:15–2:19. Specifically, Mr. Greenspun requested that the brothers appear at the sentencing together because counsel for the brothers had "broken up arguments as far as forfeiture particularity and so on. On those fronts, things appear to be fairly consistent." *Id.* Mr. Greenspun and Petitioner's counsel, Nina Ginsberg, alternated speaking during the hearing and expounded on each other's arguments to modify the forfeiture, delimit the brothers' role in the RICO conspiracy, and advocate for a lower fraud loss calculation. On the strength of the representations at sentencing, the Court declined to disturb its earlier fraud loss calculation. Ultimately, the Court found that Petitioner had a criminal history of zero and an offense level of 29 resulting in a guideline range of 87-108 months incarceration for the RICO conspiracy. As noted above, the Court sentenced Petitioner to 96 months.

Some of Petitioner's co-defendants received lower periods of incarceration in connection with their guilty pleas. Mr. Boaz received a 36-month sentence and Mrs. Borohov received a 24-month sentence. Petitioner's brother received a longer sentence of 108 months.

On October 28, 2015, the Court issued a Preliminary Order of Forfeiture which fixed the amount of fraud loss for Petitioner at $20 million. Dkt. No. 733. The Court found that Petitioner "knew about at least $20 million as he was involved at the higher levels of the conspiracy and financed some of the operations." *Id.* at 7.

On May 20, 2016, Petitioner collaterally challenged his conviction through the instant Motion. Dkt. 800. The Court ordered the Government to answer the Motion. Dkt. No. 810. The Government timely answered. Dkt. No. 822. Petitioner filed a letter on June 14, 2017 supplementing his § 2255 petition citing the Supreme Court's recent decision in *Honeycutt v. United States*, 137 S. Ct. 1626, 198 L. Ed. 2d 73 (2017). Dkt. No. 856. The Government filed an opposition to that letter. Dkt. No. 857.

**II. Legal Standard**

A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citing 28 U.S.C. § 2255). The petitioner bears the burden of proving his grounds for relief by a preponderance of the evidence. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965). It is well settled that bare, conclusory allegations are insufficient to entitle a petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

A claim of ineffective assistance of counsel may properly be asserted for the first time in a § 2255 petition. *See United States v. DeFusco*, 949 F.2d 114, 120–21 (4th Cir. 1991). "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy the first part of the *Strickland* test, petitioner must establish that counsel failed to provide reasonably effective assistance, that is, the counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). Second, petitioner must "show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Importantly, a court need not review the reasonableness of counsel's performance if the petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998) (citing *Strickland*, 466 U.S. at 697).

### III. Discussion

Petitioner contends that his constitutional right to a defense was compromised by the actions of his co-defendant's attorney, with whom he had joined in a joint defense. Dkt. No. 801 at 2. Specifically Petitioner sets forth two claims. First, that Mr. Greenspun, who represented his brother, Arkadiy Bangiyev,[1] compromised Petitioner's right to a fair hearing when he conceded that the fraud loss amount in the case was in excess of $7 million. Second, Petitioner's own counsel, Ms. Ginsberg, was ineffective for failing to advise the Court that Mr. Greenspuns comments about the fraud loss amount did not apply to Petitioner. Petitioner raises a third claim in his June 14 letter. Petitioner contends that the Supreme Court's recent decision in *Honeycutt*,

---

[1] Petitioner identifies his brother as "Alex" but the Court opts to use the co-defendant's full name, "Arkadiy", as listed in the case file.

5

137 S. Ct. 1626, 198, requires the Court to grant, at a minimum, the forfeiture aspect of Petitioner's § 2255 petition.

The Government contends that Petitioner's claims satisfy neither the performance nor the prejudice prongs of *Strickland*. The Government also contends that the issue raised by the June 14 letter is foreclosed by the plea agreement, not cognizable in a § 2255 motion, foreclosed because it could have been, but was not, raised on direct appeal, and is otherwise not ripe for adjudication.

The Court conducted a detailed review of the propriety of Mr. Greenspun's actions in its memorandum opinion denying Arkadiy Banyigev's Motion to Vacate pursuant to § 2255. Dkt. No. 844. The Court found that Arkadiy was not prejudiced by the efforts of his counsel. *Id.* at 7-9. In calculating the fraud loss amount and the ultimate sentence, the Court not only considered the arguments of counsel but also the testimony of Ms. Dellibovi, the statements of co-defendants, and other pertinent sentencing factors. The Court took the same careful approach in rendering Petitioner's sentence. Because Mr. Greenspun's actions as counsel for Arkadiy Bangiyev were not prejudicial to his client, those same actions similarly could not prejudice Petitioner.

Petitioner's claim against his own counsel also fails the "prejudice" prong of *Strickland*. Petitioner contends that Ms. Ginsberg should have clarified for the Court that Mr. Greenspun's "concession" of the fraud loss amount did not apply to Petitioner. As the Court previously recognized, Mr. Greenspun's strategic arguments about the fraud loss amount did not prejudice Arkadiy Bangiyev. For the same reason, the strategy did not prejudice Petitioner. The Court relied on its own independent analysis of the testimony of witnesses and the evidence in order to determine the appropriate fraud loss amount.

Petitioner's claim against his counsel also fails the "performance" prong of *Strickland*. "Under the second prong of *Strickland*'s test, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' " *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689.) Mr. Greenspun adopted a particular strategy with respect to the fraud loss amount because of the overwhelming evidence of fraud loss liability against the Bangiyevs. This strategic decision was not an error so grave that it deprived Bangiyev the counsel guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687. Petitioner concedes throughout his Motion that he collaborated with his brother under a joint defense agreement. *See, e.g.*, Dkt. No. 801 at 2. The joint defense agreement was also a strategic decision. Because Mr. Greenspun's strategy did not constitute unreasonable performance under *Strickland* and Ms. Ginsberg's decision to join the defense was also a reasonable strategy, Petitioner's claim fails the "performance" prong as well.

Petitioner's claim that *Honeycutt v. United States* requires the Court to recalculate the fraud loss amount requires a more probing analysis. In *Honeycutt*, the Supreme Court found that "[f]orfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime." *Honeycutt v. United States*, 137 S. Ct. 1626, 1635, 198 L. Ed. 2d 73 (2017). Accordingly, the Supreme Court held that a defendant was not liable for his co-conspirator's forfeiture judgment because the defendant did not benefit personally from the transactions. *Id.* at 1630. Based on this decision, Petitioner asks the Court to "grant[], at a minimum, the forfeiture aspect of my pending 2255 petition." Dkt. No. 856.

The Government raises four objections to the reconsideration of the forfeiture decision in this case. First, the Government contends that Petitioner's challenge to the forfeiture order is foreclosed by the plea agreement in this case which contains a waiver to any challenge to

7

forfeiture. *See* Dkt. No. 507 at ¶ 17. Second, the Government contends that forfeiture challenges are generally not cognizable in § 2255 motions. Third, the Government submits that the challenge is specifically foreclosed in this case via § 2255 because the issue could have been but was not raised on direct appeal. Fourth, the Government argues that the issue raised by *Honeycutt* is not ripe for review by the Court because the Court has not yet begun to collect on the numerous assets named in the forfeiture order for which Petitioner had an ownership interest.

To the extent that Petitioner seeks to reduce the amount he owes in forfeiture through this Motion, the Government correctly points out that the relief cannot be provided through § 2255. *See, e.g., United States v. Knafel*, No. 5:12-CR-00015-1, 2013 WL 6404966, at *1 (W.D. Va. Dec. 6, 2013) ("Petitioner cannot attack the validity of the forfeiture order via § 2255 because the outcome would not have any impact on the length of his custody pursuant to the criminal judgment."). Construing Petitioner's Motion liberally, the Court reasons that Petitioner is not simply challenging the forfeiture order for its own sake but also raising the issue expressly left open by the court in *Knafel*—challenging a forfeiture determination which affects the length of custody.

Nevertheless, Petitioner's claim is without merit because *Honeycutt* is not applicable to the fraud loss calculation in this case. *Honeycutt* found that the bedrock principle of conspiracy liability was not incorporated into forfeiture for drug offenses under 21 U.S.C. § 853. *See Honeycutt*, 137 S. Ct. at 1634. By contrast, the Fourth Circuit has held that "[m]embers of a conspiracy can be held accountable at sentencing for the entire foreseeable loss caused by the conspiracy or scheme." *United States v. Johnson*, No. 15-4366, 2017 WL 1226100, at *9 (4th Cir. Apr. 3, 2017); *see also United States v. Abdulla*, 632 F. App'x 98, 101 (4th Cir. 2015), *cert. denied sub nom. Mohssen v. United States*, 136 S. Ct. 1237, 194 L. Ed. 2d 231 (2016). These

decisions establish that, unlike 21 U.S.C. § 853, calculating fraud loss does incorporate the bedrock principles of conspiracy liability. The Court appropriately applied those principles and found that there was ample evidence that the fraud loss amount was between $7 to $20 million dollars. There is no reason to disturb that conclusion on the basis of the *Honeycutt* decision.

### IV. Conclusion

For the foregoing reasons the Court **DENIES** Defendant's Motion to Vacate under 28 U.S.C. § 2255. (Dkt. No. 801). Consequently, the petition is **DISMISSED**.

An appropriate order shall issue.

August 18, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge