IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:14cr206 |
| | ) | |
| EDUARD BANGIYEV, et al | ) | |
| | ) | |
| Defendants | ) | |

MEMORANDUM ORDER

Before the Court are the petitions of Irina Alishayeva, Anna Bangiyev, Ilana Bangiyeva, Riva Badalova, and Simkho Bangiyev filed pursuant to Federal Rule of Criminal Procedure (FRCP) §32.2(c)(1) to amend the preliminary order of forfeiture entered against Eduard Bangiyev (Dkt. 733) and Arkadiy Bangiyev (Dkt. 730) pursuant to FRCP 32.2(c)(2). The matter has been fully briefed and an evidentiary hearing was held on November 5, 2019. The parties filed post-hearing proposed findings of fact and conclusions of law. The properties in dispute include:

a. 110-37 69th Avenue, Forest Hills, New York
b. 112-44 68th Avenue, Forest Hills, New York
c. 102-02 65th Road, Forest Hills, New York
d. 278 Shares of stock in Park City Tenant's Corp\ #10N 61-25 98th St, Rego Park New York
e. 98-21 67th Avenue, Flushing, New York
f. 98-23 67th Avenue, Flushing, New York
g. Approximately $572,848.39 in an account ending 8926 at TD Bank
h. Approximately $1,043.48 in account ending in 9268 at TD Bank
I. Approximately $7,371.71 in account ending 8949 at TD Bank
j. One 2008 Lexus LX 570, VIN JTJHY00W284010109
k. One Black 2011 LR4 Land Rover, VIN: SALAK2D48BA577140
l. $38,705 seized from 110-37 69th Avenue, Forest Hills, New York
m. Jewelry seized from 100-37 69th Avenue, Forest Hills, New York

The parties have entered into a Stipulation of Certain Facts which is recounted herein.

    a.    **110-37 69th Avenue, Forest Hills, New York**

1.    The current titled owners of this property are Eduard Bangiyev and Irina Alishayeva (husband and wife) (1/3), Arkadiy Bangiyev (1/3), and Ilana Bangiyeva (1/3). G.E. AP-1, AP-2, TR at 57.[1]

2.    In the Amended Preliminary Order of Forfeiture (APOF) for defendant Arkadiy Bangiyev and in the Preliminary Order of Forfeiture (POF) for defendant Eduard Bangiyev, the Court found that this property was property that afforded a source of influence over the defendant's counterfeiting and racketeering enterprise.  Doc. 736 at 15; Doc 733 at 19.

3.    There is no mortgage on this property. TR at 58.  The previous mortgage was paid off in 2012. *Id.*

4.    This property was first purchased by Eduard and Arkadiy Bangiyev on September 25, 2003 for $850,000.00 with a mortgage of $750,000.  On August 26, 2004 title was transferred to Eduard, Arkadiy, and Ilana Bangiyev.  On September 15, 2008 title was transferred to Eduard Bangiyev and Irina Alishayeva (husband and wife) (1/3), Arkadiy Bangiyev (1/3), and Ilana Bangiyeva (1/3).  G.E. AP-1, AP-2, TR at 57.

5.    On or about March 30, 2005 Ilana Bangiyeva, Eduard Bangiyev, and Arkadiy

---

[1]    References to 'TR' are to the transcript of the November 5, 2019, hearing.  References to 'GE' are to the government exhibits offered at the hearing.

Bangiyev obtained a $250,000.00 Home Equity Loan with HSBC Bank. On or about July 26, 2005 Ilana, Eduard, and Arkadiy obtained another Home Equity Line Mortgage in the amount of $500,000.00 through HSBC Bank.

      **b.**    **112-44 68th Avenue, Forest Hills, New York**

      1.    The current titled owners of 112-44 68th Avenue, Forest Hills, New York, are Arkadiy Bangiyev and Anna Bangiyev who hold title as tenants by the entirety. G.E. AP-1, AP-2, TR at 10.

      2.    On March 15, 2010 defendant Arkadiy Bangiyev and Anna Bangiyev were married in a religious ceremony and on January 11, 2011 in a civil ceremony. Doc. 754 at 2; TR at 10.

      3.    The property was purchased by Defendant Arkadiy Bangiyev on January 26, 2011, for $1,150,000.00, with a mortgage of $575,00.00. Doc 754 at 14, GE AP-1, AP-2, TR at 10.

      4.    In 2012 the house on the property was severely damaged by fire, and on October 4, 2012 the mortgagee Maspeth Federal Savings, filed a satisfaction of mortgage after receiving payment from Harleysville Insurance Company to satisfy the mortgage. Doc 754 at 16, TR at 11-12.

      5.    On July 2, 2013, defendant Arkadiy Bangiyev conveyed title to himself and Anna Bangiyev as tenants by the entirety. Doc 754 at 14; G.E. AP-1, AP-2.

      6.    Due to defendant Arkadiy Bangiyev's arrest on May 28, 2014 reconstruction of the house was stopped. Doc 754 at 17.

      7.    In the Amended Preliminary Order of Forfeiture (APOF) the Court found that this property was purchased with proceeds of the conspiracy, or as a substitute asset. Doc 736 at 20-

3

21.

      8.     Petitioner Anna Bangiyev did not invest any of her own money in the purchase of the property. TR at 24.

      9     Petitioner Anna Bangiyev did not earn her own income between 2011 and 2013. TR. At 24-25.

      **c.     102-02 65th Road, Forest Hills, New York**

      1.     The current titled owners of this property are Ilana Bangiyeva, Irina Alishayeva and Arkadiy Bangiyev. Doc 736 at 26; G.E. AP-1, AP-2.

      2.     In the APOF, the Court found that this property was purchased with proceeds of the conspiracy, or as a substitute asset. Doc 736 at 20.

      3.     The monthly mortgage payments on this property in the amount of $2,500.13 have been paid by Anna Bangiyev since April of 2015 until present. TR at 25.

      4.     Defendant Arkadiy Bangiyev's family currently lives in this house due to the unfinished construction at 112-44 68th Avenue, Forest Hills, New York. TR at 44-45.

      5.     Petitioner Ilana Bangiyeva first acquired a legal interest in this property via a deed dated July 27, 2009. Doc 752-1.

      6.     This property was first purchased by Julia Udovenko and Irina Alishayeva on September 29, 2008 for $880,000.00, with a mortgage of $417,000. G.E. AP-1; AP-2. On June 12, 2009 it was transferred to defendant Arkadiy Bangiyev and Irina Alishayeva. *Id.* On July 23, 2009 it was transferred to Ilana Bangiyeva and Irina Alishayeva. *Id.* On March 3, 2014 it was transferred to Ilana Bangiyeva, Irina Alishayeva and Arkadiy Bangiyev. *Id.*

      7.     Allstate Insurance Company issued a check dated September 17, 2007 in the

amount of $230,450.00 to defendant Eduard Bangiyev to cover the loss of stolen jewelry of Riva Badalova.  Doc 752-7 (page 22 of 32).  Riva Badalova contends that she gifted the received insurance proceeds to her daughter Ilana Bangiyeva, although the Government disputes that contention.  On September 12, 2008 Petitioner Ilana Bangiyeva received a wire transfer of $235,000 from defendant Eduard Bangiyev.  Doc 752-7 (Page 15 of 32).  The funds were transferred from defendant Eduard Bangiyev and were then used as the down payment on the property.

### d.    61-25 98th Street, Apt. 10N, Rego Park, New York

1.    The current titled owners of this cooperative apartment are Arkadiy Bangiyev and his sister Ilana Bangiyeva.  Doc 736 at 30; G.E. AP-1, AP-2.

2.    In the APOF, the Court found that this property was purchased with proceeds of the conspiracy or as a substitute asset.  Doc 736 at 20-21.

3.    This property was first purchased by Arkadiy Bangiyev and Ilana Bangiyeva on July 13, 2011 for $105,000.00.  G.E. AP-1, AP-2.

### e.    98-21 67th Avenue, Flushing, New York

1.    The current titled owners of this property are Ilana Bangiyeva and Irina Alishayeva.  G.E. AP-1, AP-2.

2.    This Court found that this property is subject to forfeiture as proceeds of the conspiracy or as a substitute asset.  Doc. 736 at 16-17.

3.    The costs of this property such as the mortgage, insurance and taxes, are covered by the rent received from the tenants.  TR at 48-49.

4.    This property was first purchased by Julia Udovenko and Irina Alishayeva on November 30, 2007 for $475,000.00 with a mortgage of $300,000.  G.E. AP-1, AP-2.  On June 12,

2009 it was transferred to defendant Arkadiy Bangiyev and Irina Alishayeva. *Id.* On July 23, 2009, the property was transferred to Ilana Bangiyeva and Irina Alishayeva. *Id.*

      **f.**     **98-23 67 Avenue, Flushing, New York**

      1.     The current titled owners of this property are Ilana Bangiyeva and Irina Alishayeva. G.E. AP-1, AP-2.

      2.     This Court found that this property is subject to forfeiture as proceeds of the conspiracy or as a substitute asset.

      3.     The costs of this property such as the mortgage, insurance and taxes are covered by the rent received from the tenants. TR at 48-49.

      4.     This property was first purchased by Julia udovenko on November 30, 207 for $515,000.00 with a mortgage of $350,000. G.E. AP-1, AP-2. On June 12, 2009 it was transferred to defendant Arkadiy Bangiyev. *Id.* On July 23, 2009, the property was transferred to Ilana Bangiyeva and Irina Alishayeva. *Id.*

      **g.**     **$572,848.49 in TD Bank account 8926**

      1.     This bank account is held in the names of Arkadiy Bangiyev and Ilana Bangiyeva. Doc 736 at 20; Doc 754 at 6.

      2.     In the APOF, the Court found that this property derived from proceeds of the conspiracy, or as a substitute asset. Doc. 736 at 20.

      **h.**     **$1,043.48 in TD Bank account 9268.**

      1.     This bank account is held in the names of Arkadiy Bangiyev and Anna Bangiyev. Doc 736 at 21; Doc 754 at 7.

      2.     In the APOF, the Court found that this property derived from proceeds of the

conspiracy, or as a substitute asset. Doc 736 at 21.

        3.      On November 5, 2019 Petitioner Anna Bangiyev withdrew her claim to this property. TR at 18.

        **I.**      **Approximately $7,371.71 in account ending 8949 at TD Bank.**

        1.      Petitioner Ilana Bangiyeva is listed as a joint account holder of this property along with Defendant Arkadiy Bangiyev. Doc 752 at 20.

        2.      In the APOF the Court found that this property was derived from proceeds of the conspiracy or as a substitute asset. Doc 736 at 21

        **j.**      **One 2008 Lexus LX 570, VIN JTJHY00W284010109**

        1.      Petitioner Ilana Bangiyeva is listed as the registered owner of this property. Doc 752 at 25. However, she gifted the vehicle to her father. *Id* at n.2.

        2.      In the APOF the Court found that this property was derived from proceeds of the conspiracy, or as a substitute asset. Doc 736 a 21.

        **k.**      **One Black 2011 LR 4 Land Rover, VIN SALAK2D48BA557140**

        1.      The Government does not contest Petitioner's claim to this vehicle.

        **l.**      **$38,705.00 seized from 110-37 69th Avenue, Forest Hills, New York.**

        1.      $28,000.00 in cash seized from 110-37 69th Avenue, Forest Hills, New York was found in men's clothing in the basement.

        2.      $5,000.00 in cash seized from 110-37 69th Avenue, Forest Hills, New York was found in the bedroom of Petitioner Riva Badalova.

### Background

        From 2004 until 2014, a criminal organization manufactured counterfeit United States

currency representing tens of millions of dollars.  The United States Secret Service ("USSS") identified defendants Arkadiy and Eduard Bangiyev as members of this enterprise after conducting a lengthy investigation that included approximately nine months of court authorized phone wiretaps. On August 7, 2014 a grand jury returned a two-count indictment against Arkadiy and Eduard and others whom the USSS had also identified as being involved in the criminal organization. Dkt. 203. Count One of the Superseding Indictment charged Arkadiy and Eduard with participating in a Racketeer Influenced and Corrupt Organization (RICO) conspiracy in violation of 15 U.S.C. § 1962(d).  *Id.*  Count Two charged Arkadiy and Eduard with participating in a conspiracy to commit counterfeiting offenses in violation of 18 U.S.C. §§ 371, 471, 472, 473, and 474.  *Id.*  Also included in the Superseding indictment was a forfeiture allegation advising the defendants that if they were convicted of Count One the Government would seek the forfeiture of various property the defendants acquired or maintained in violation of 18 U.S.C. § 162.  *Id* at 22.

On January 25, 2015 Arkadiy and Eduard pled guilty to Count One of the Superseding Indictment. Dkt. 505.  A written plea agreement was entered in which Arkadiy and Eduard agreed to "forfeit all interests in any asset derived from counterfeiting or racketeering that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense."  *Id*. at 9.  On April 20, 2015 the Government moved for a Preliminary Order of Forfeiture against each of the defendants, Itzhak Loz, Ronen Fakiro, Boaz Borohov, Ofra Borohov, Arkadiy Bangiyev, Eduard Bangiyev, and Johnny Lee, seeking the entry of money judgments up to $70,474,250 with joint and several liability against each of the defendants. Dkt. 601. The Court found that Arkadiy and Eduard reasonably knew about $20,000,000 of the proceeds

and entered a money judgment against them in that amount.

On October 27, 2015 the Court issued a Preliminary Order of Forfeiture as to the properties identified above.

### Applicable Law

Following the entry of the Preliminary Order of Forfeiture, Fed R. Crim. P. 32.2(c) and 21 U.S.C. § 853(n) mandate an ancillary proceeding, which is designed to quiet title. A preliminary order of forfeiture extinguishes only the defendant's interest in the property, whereas the final order, entered following the ancillary proceeding, extinguishes all interests and passes clear title to the government. *United States v. Grigsby*, 665 F. App'x 708, 712 (10th Cir. 2016).

1.    Burden of Proof

In an ancillary forfeiture proceeding, the petitioner has the burden of establishing, by a preponderance of the evidence, a right to the forfeited property. 18 U.S.C. § 1963(1)(6), which is identical to 21 U.S.C. § 853(n)(6); *United States v. McHan,* 345 F.3d 262, 268 (4th Cir. 2003) (citing 21 U.S.C. § 853 (n)(6)). The Fourth Circuit has noted the similarities in 21 U.S.C. § 853 and 18 U.S.C. § 1963, declaring that "[t]he restraint and substitute assets provisions of § 853 are identical to those in the RICO statute, and we see no reason to construe them differently." *United States v. Bollin*, 264 F.3d 391, 421-22 (4th Cir. 2001). Thus, the caselaw construing 21 U.S.C. § 853(n)(6) should apply equally to 18 U.S.C. § 1963 (l)(6).

There are two, and only two, grounds for recovery as an ancillary petitioner. To prevail in the ancillary proceeding, a third-party claimant must establish that she falls within one of two "narrow categories" of property owners for whom the statute provides relief in Sections 1963 (l)(6), as follows:

9

> (A)    The petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B)    The petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

18 U.S.C. § 1963 (l)(6); *see also* 21 U.S.C. § 853(n)(6); *United States v. Oregon,* 671 F.3d 484, 491

(4th Cir. 2012); *United States v. Cox,* 575 F.3d 352, 358 (4th Cir. 2009); *United States v. Schecter,*

251 F.3d 490, 494 (4th Cir. 2001) (to succeed with a third party claim, a third party must have had

an interest in the property at that time, or must have acquired it later as a bona fide purchaser).

In the forfeiture ancillary proceeding, the sole issue is who owns the property set out in the

preliminary order of forfeiture.

Most courts hold that in the ancillary hearing to quiet title a petitioner cannot relitigate the

forfeitability of the property in the ancillary proceeding. *United States v. Fabian,* 764 F.3d 636, 638

(6th Cir. 2014) ("§ 853(n) does not permit relitigation of the district court's antecedent determination

that an item of property is subject to forfeiture"); *United States v. Davenport,* 668 F.3d 1316, 1321

(11th Cir. 2012) (third party cannot challenge the forfeitability of the property in the ancillary

proceeding, rather ownership is the issue); *United States v. Porchay,* 533 F.3d 704, 710 (8th Cir.

2008) (once the government establishes the forfeitability of the property in the criminal case against

the defendant, "there is no provision in § 853(n) to relitigate the outcome of those proceedings");

*United States v. Andrews,* 530 F.3d 1232, 1237 (10th Cir. 2008) ("a third party has no right to

challenge the preliminary order's finding of profitability," rather the only issue in the ancillary

proceeding is ownership, which is a complete defense to the forfeiture). *See also United States v. Bradley*, 882 F.3d 390, 392-93 (2d Cir. 2018) ("the § 853(n) proceeding . . . merely seeks to settle legal interests in property" and noting that it "greatly resembles a quiet title action"). In other words, a third party petitioner in an ancillary proceeding in most jurisdictions is not entitled to have the Court revisit any determination that a certain property was proceeds, facilitating property, or a substitute asset. *United States v. White*, 675 F.3d 1073, 1077-78 (8th Cir. 2012) (former spouse could not contest the forfeiture on the grounds that the forfeited property is not traceable to the defendant's crimes).

The Fourth Circuit, in *United States v. Reckmeyer,* 836 F.2d 200, 206 (4th Cir. 1987) found that third party petitioners could challenge the validity of a preliminary order of forfeiture in the ancillary proceeding.

*Reckmeyer*, relied upon by Petitioners, was decided in 1987, just three years after the 1984 Comprehensive Forfeiture Act became law. Prior to the enactment of the 1984 Forfeiture Act, there was no statutory mechanism whereby a third party could petition the court and participate in a quiet title-type proceeding with respect to forfeited assets.

Congress enacted 21 U.S.C. § 853(n)(6) as the statutory mechanism allowing third parties to petition the court to adjudicate their interest in forfeited assets. When *Reckmeyer* was decided in 1987, Rule 32.2 did not exist and would not exist for another thirteen years. The Advisory Committee notes to Rule 32.2, implemented post-*Reckmeyer,* state that "[the ancillary proceeding] does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property.

Indeed, the Fourth Circuit issued a published opinion in which it juxtaposed civil asset

forfeiture with the ancillary proceeding attached to criminal asset forfeiture. *United States v. Phillips*, 883 F.3d 399, 404-05 (4th Cir. Feb. 21, 2018). In doing so, the Fourth Circuit noted that "§ 853(n) allows a claimant to intervene in a criminal forfeiture proceeding only *after* the court has already resolved the merits and ordered forfeiture. By contrast, in civil forfeiture cases, a claimant with standing may intervene earlier to contest the forfeiture on the merits." *Id.* (emphasis in the original). Rather than being permitted to litigate the forfeiture on the merits, the Fourth Circuit made clear that a petitioner in a criminal ancillary proceeding is limited to requesting that the Court "adjudicate the validity of his interest in the property." *Id.* Both the Advisory Committee's notes to Rule 32.2 and the Fourth Circuit's most recent word on the matter are at odds with the interpretation the petitioners offer the Court. Therefore, the Court rejects the petitioner's invitation to rehash the question of whether the assets at issue are subject to forfeiture. The sole issue before the Court now is ownership. *See SKL Investments, Inc., v. United States*, No. 13-mc-38, 2014 WL 4365297, at *3-*4 (W.D.Tenn. Sept. 2, 2014) ("ancillary proceedings do not allow third parties to challenge the nexus between the forfeited property and the defendant's criminal activity" and collecting cases on point from the Fifth, Eleventh, Eighth, Second, and Ninth Circuits, as well as citing the Advisory Committee Notes to Rule 32.2).

### Evidentiary Rulings that Apply to Multiple Claims

1.      Ilana Bangiyeva claims that she invested with her brothers Eduard and Arkadiy in purchasing $500,000 in gold and that it increased to $883,000. She states that her one-third portion of this money went into investing in several of the seized properties. There is simply no credible evidence outside of Ilana Bangiyeva's testimony that gold was ever purchased by her and Eduard and Arkadiy Bangiyev as an investment or that it increased in value over time. There is no evidence of

a gold purchase of that size, no evidence that the investment was used to acquire an interest in any real estate or put into an account, no evidence of any tax records or records of any kind that evidence income produced or capital gains accrued on any gold investment. The evidence presented by Ilana Bangiyeva does not reach a preponderance of the evidence.

2.      $230,450.00

Ilana Bangiyeva states that she received $230,450 from Eduard Bangiyeva and invested it in their real estate. The evidence shows that Ilana Bangiyeva's mother, Riva Badalova, filed a claim for lost/stolen jewelry more than one year before Ilana Bangiyeva received this money. The insurance claim was paid and Eduard Bangiyev received a check for $230,450 which he deposited into his account before transferring it to Ilana Bangiyeva one year later.

The Court finds by a preponderance of the evidence that Ilana Bangiyeva came into possession of the $230,450, paid by the insurance company after her mother Riva Badalova transferred it to her through Edward Bangiyev, and that the money was used to invest in the 102-02 65th Road, Rego Park, New York property.

3.      $38,705.00 in currency.

Petitioners Riva Badalova and Simkho Bangiyev assert an interest in $38,705 in currency seized from the home they shared with Ilana Bangiyeva and Eduard Bangiyev at 110-37 69th Avenue, Forest Hills, New York, stating that the funds were received by Riva Badalova and Simkho Bangiyev from friends while they were in Israel for Riva's mother's burial. Riva Badalova stated that it was customary for friends and neighbors to give gifts of cash as part of the grieving for her father's death. She said she brought the money home and was saving it. The currency was found by the FBI in multiple locations in the home.

There is no evidentiary support for this testimony other than a list of 378 donors identified by her, and it makes little sense to the Court. One would assume that burial arrangements and payment are made before one travels to Israel to bury someone or while there, and that records would exist to confirm any payment. If the funds came from this source they would ordinarily have been placed in a bank account when she returned to the United States, as petitioners have stated that they have previously had jewelry stolen from the house. It is far more likely that the money was proceeds of the counterfeiting crime, as it was found in the home being used by Eduard Bangiyev to further the RICO enterprise, and where $28,000 of the currency was located in proximity of a money counter, and some was found in clothing.

### Properties

5.      100-37 69th Avenue, Forest Hills, New York

The current owners of this property are Eduard Bangiyev and Irina Alishayeva (1/3), Arkadiy Bangiyev (1/3) and Ilana Bangiyeva (1/3). Eduard's and Arkadiys's interest in the property was forfeited to the government as it afforded a source of influence over the enterprise. However, Irina Alishayeva and Eduard Bangiyev held their ownership in tenancy by the entirety, so Irina Alishayeva still has an undivided 1/3 interest in the property.

The Court will allow Irina Alishayeva to remain in the house, which is the family's primary residence so long as she and Eduard are married, as long as she survives. The government shall have a lien on the premises to protect its interest.

Ilana Bangiyev also asserts a 1/3 interest in the property based on her pre-existing ownership under Title 18 U.S.C. § 1863(1)(6)(A). Her ownership is complicated by mortgages placed on the home for $750,000.00 that weren't repaid until June 1, 2012 . Ilana Bangiyeva states that she used

14

money from her investment in gold with Eduard and Arkadiy to satisfy her share of the mortgage payoff. During their ownership the United States moved to forfeit this property as property involved in monetary transactions involving criminally derived property. This action was taken after Eduard and Arkadiy Bangiyev had apparently attempted to defraud a customer of over $1 million, and that this money had been used to pay off the mortgages and lines of credit on this property. Another portion of the proceeds, $235,000, was wired to Ilana Bangiyeva. Ilana then transferred $375,000 from that account by bank checks to be used for a deposit on 102-02 65th Road, Rego Park, New York.

The Court has found that there is no persuasive evidence that any of the Bangiyevs invested in $500,000 or more in gold and/or that they turned it into $893,000. Therefore, the Court discounts this money as a legitimate source of income for Ilana Bangiyev.

The Court recognizes that Ilana Bangiyeva held steady employment in 2005 and 2009-2015, earning between $57,000 and $87,000 annually according to her tax returns, but her income went to pay for her living costs and there is no evidence that she saved much of it.

Therefore, it is clear to the Court that any money used to pay the $662,000 settlement fee to the government to avoid the seizure of the 69th Avenue property came from proceeds of the crime and not from Ilana's income from other sources. She is therefore not entitled to a one-third interest as a pre-existing owner.

Simkho Bangiyev and Riva Badalova also claim an ownership interest in this real property, although neither is on the title. They state that they contributed money to the purchase of the property and also paid rent. Neither contribution gives them any legal title to the property and a right to claim an interest through this petition. Instead, as the government explains, they are at most

entitled to a lien against the title holders at the time of the contribution.

6. 102-02 65th Road, Rego Park, New York

This property was purchased in 2008 by Arkadiy Bangiyev for $800,000 and subsequently transferred to the joint ownership of Arkadiy Bangiyev, Eduard Bangiyev, Irina Alishayeva, and Ilana Bangiyeva. This property, like the above 69th Street property, was seized by the government as a property acquired by fraudulent means, and the Bangiyevs settled this dispute and the 69th Street dispute by paying the government $662,000 to resolve both disputes. Eduard Bangiyev's and Arkadiy Bangiyev's interests in this property have been forfeited.

Ilana Bangiyeva asserts she was a bona fide purchaser of this property and contributed $375,000 toward its purchase. The Court will credit the $235,000 contribution Ilana made from the insurance proceeds that the Court has already found was legitimate. However, as the Court has already found that the gold investment money is unsupported and will not be counted, and Ilana will not be credited with the additional $140,000 sought.

Irina Alishayeva claims an interest in this property through her marriage to Eduard and as a preexisting owner, as well as through financial contributions. As the government points out, she cannot be considered a pre-existing owner as she gained interest to the title after the property was involved in this criminal conspiracy. She also has not shown that she made specific monetary contribution to the property and therefore her petition as to the property is **DENIED.**

Anna Bangiyev has asserted an interest in this 65th Road residence through her husband Arkadiy's co-ownership,. She is not on the deed and did not contribute to the down payment. She resides with her children at this residence and has been making mortgage payments for the last six years in a total amount of approximately $180,000. If she is unsuccessful in her petition to share in

16

the property's value, she seeks reimbursement for the $180,000. She also seeks to be allowed to remain in the residence for six months if it is forfeited.

Anna Bangiyev has no legal interest in the 65th Road property and her mortgage payments of $180,000 may not be assessed against the government. She cites the Justice Department policy in support of her position, but case law supports the argument that taxes do not become the responsibility of the government until a final order of forfeiture, and not a preliminary order of forfeiture. Petitioner also misconstrues the Justice Department policy, which applies only when the Government has obtained a final order for forfeiture for the property and becomes the owner. *United States v. Gas Pipe, Inc.,* WL 8135280, \*2 (N.D. Tex. Jan. 22, 2016) (finding DOJ policy to pay accrued property taxes in Ch. 5, Sec, III.A of Policy Manual does not apply when property has not yet been forfeited and has not been seized pre-trial; defendant's motion to require Government to pay taxes on property named in indictment denied; the court also remarked that "filing a notice of *lis pendens* is not a seizure of real property."). Thus, because Petitioner has a valid interest in the property, she is liable for her portion of the taxes and not the Government. *United States v. Fisch,* 2018 WL 1541780, \*2 (S.D. Tex. Mar. 28, 2018) (because spouse's one-half interest in real property was not forfeited, she remained liable for one-half of property taxes; overruling objection to order directing that all back taxes, including wife's share, be paid from proceeds of sale of property), *aff'd sub nom United States v. Bertman,* 774 F. App'x 236 (5th Cir. 2019).

The Court will delay her removal from the house until June 1, 2022.

7. <u>98-21 - 67th Avenue, Flushing, New York</u>

As of June and July 2009 Ilana Bangiyeva and Irina Alishayeva are the owners of record of this rental property, which the Court found was purchased with proceeds from the conspiracy or a

substitute asset.  Neither had an interest dating before the conspiracy existed.  The costs of this property are covered by the rent received from tenants.

Ilana Bangiyeva asserts an interest in this property as an innocent owner and bona fide purchaser from proceeds from the gold investment referenced herein.  The Court has found that there is no competent evidence that there was a large investment in gold made by Eduard and Arkadiy.  Therefore, this argument fails and Ilana cannot show that she is a bona fide purchaser.  She also is not an innocent owner based on when her interest arose.

Irina Alishayeva asserts an interest in this property as an innocent owner, but once again her ownership interest began in 2009, after the property was subject to forfeiture as an asset acquired with tainted funds.  Therefore, Irina Alishayeva has no claim to an interest in this property as she has not alleged she was a bona fide purchaser.

Anna Bangiyev does not assert an interest in this property.

8.      98-23 - 67th Avenue, Flushing NY

As of June and July 2009 Ilana Bangiyeva and Irina Alishayeva are the owners of record of this rental property, which the Court found was purchased with proceeds from the conspiracy or a substitute asset.  Neither had an interest in the property before the conspiracy existed.  The costs of this property are covered by the rent received from tenants.

Ilana asserts an interest in this property as an innocent owner and bona fide purchaser from proceeds from the gold investment referenced herein.  Again, the Court has found that there is no competent evidence that there was a large investment in gold made by Eduard and Arkadiy.  Therefore, this argument fails and Ilana Bangiyeva cannot show that she is a bona fide purchaser.  She also is not an innocent owner based on the timing her interest arose.

Irina Alishayeva asserts an interest in this property as an innocent owner but once again her ownership interest began in 2009, after the property was subject to forfeiture as an asset acquired with tainted funds. Therefore, Irina Alishayeva has no claim to an interest in this property as she has not alleged she was a bona fide purchaser.

Anna Bangiyev does not assert an interest in this property.

9.     61-25 - 98th Street, Apt. 10N, Rego Park, New York

       278 shares of stock

This property was purchased by Arkadiy Bangiyev and Ilana Bangiyeva on July 11, 2011 for $105,000.00.   Ilana claims a one-half interest (Arkadiy's was forfeited) as a bona fide purchaser, however she asserts the money came from the gold sales.  As the Court has rejected the existence of the gold sales, she cannot establish that she is a bona fide purchaser and her claim is **DENIED**.

Irina Alishayeva and Anna Bangiyev make no claim to this property.

10.     $572,848 in account 8926 at TD Bank

This account is held by Arkadiy Bangiyev and Ilana Bangiyeva. Arkadiys's interest has been forfeited as proceeds of the conspiracy or a substitute asset and Ilana seeks a one-half interest.  She asserts that the funds were derived from the gold investments, but the Court has found those allegations unproven by a preponderance of the evidence. Ilana Bangiyeva also asserted that she put that same gold investment money into the real estate subject to seizure herein, creating a wide credibility gap.  She has no other income available to explain her assertions that she contributed to the $572,848.39 found in this bank account and also has not presented any deposit slips to demonstrate otherwise.

19

Anna Bangiyev claims an interest in the bank account although she is not a titled owner. Her theory of recovery is not legally cognizable and her petition for an interest in the account is **DENIED**.

Irina Alishayeva has not asserted a claim for these funds.

11.    $7,371.71 in account 8949 in TD Bank.

Arkadiy Bangiyev and Ilana Bangiyeva are the owners of this account and Ilana asserts that this money represents salary from her nursing employment. Although she doesn't submit deposits to prove that her salary was deposited into this account, the Court finds that it is reasonable to credit her testimony that it was. Therefore, these funds will not be forfeited.

12.    2008 Lexus

Ilana Bangiyeva is the registered owner of this vehicle, which was formerly registered to Westbury Jewelry. Arkadiy Bangiyev claimed to have an interest in the vehicle and it was therefore forfeited to the government in the Preliminary Order of Forfeiture. Ilana Bangiyeva and Simkho Bangiyev have claimed ownership of the vehicle as innocent owners. Ilana states that she gave the vehicle to Simkho at some point after its purchase. Considering all the evidence the Court finds that she was an innocent owner and therefore had the legal right to transfer the Lexus to her father Simkho Bangiyev, and that the vehicle should not be forfeited to the government. The Court finds that Arkadiy Bangiyev's statement that he had an interest in the vehicle does not alone provide sufficient evidence to defeat the innocent ownership.

13.    $25,000 diamond ring and Jewelry

Anna Bangiyev, Riva Badalova, and Simkho Bangiyev claim that the diamond ring found in the pocket of a suit in the basement in their residence where they resided with Arkadiy Bangiyev

was owned by her parents and then given to Anna Bangiyev as a gift.  Riva Badalova and Simkho Bangiyev filed an affidavit affirming this gift.

The government responds that Anna Bangiyev made conflicting arguments about two different rings and therefore this evidence is not credible.

The Court credits the affidavit by her parents and finds that the ring is not forfeitable.

It is **SO ORDERED.**

Liam O'Grady
United States District Judge

Alexandria, Virginia
November 15, 2021